UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CROP DATA MANAGEMENT
SYSTEMS, INC., a
California corporation,

       Plaintiff,

                            NO. CIV. S-11-1437 LKK/KJN

   v.

SOFTWARE SOLUTIONS
INTEGRATED, LLC;                      O R D E R
SOFTWARE SOLUTIONS OF
ILLINOIS, INC.; and
DOES 1 through 20, inclusive,

       Defendants.
                                     /

    This is an action between two software manufacturing companies for breach of a joint venture agreement to bundle agricultural accounting software with agricultural chemical software. Plaintiff Crop Data Management Systems, Inc. ("CDMS") initially brought this action in the Sacramento Superior Court of California. Defendants Software Solutions Integrated, LLC and Software Solutions of Illinois, Inc. (collectively "SSI"), removed the action to the district court on the basis of diversity jurisdiction.

Presently before the court is Plaintiff's motion to modify the scheduling order and for leave to amend the complaint to add claims against current non-parties, The Lyman Group, Inc. and The Tremont Group, Inc. (collectively "Lyman"), which Defendants oppose. Pl's Mot., ECF No. 20; Defs' Opp'n, ECF No. 29.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A. Plaintiff's Preceding & Separate State Court Action Against Lyman[1]**

On February 15, 2007, Plaintiff CDMS filed a first amended complaint in state court against The Lyman Group, Inc. and The Tremont Group, Inc. (collectively "Lyman"), among other defendants, for, <u>inter alia</u>, misappropriation of trade secrets and conversion. Garrison Decl., ECF No. 30, Ex. A (Pl's First Am. Compl.).

In support of Plaintiff's claim for misappropriation of trade secrets in state court, Plaintiff alleged that, "Defendants . . . fail[ed] and refus[ed] to uninstall and return CDMS proprietary

////

////

---

[1] The court can judicially notice matters of public record. <u>See</u> Fed. R. Evid. 201(b); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001) (citing <u>Mack v. South Bay Beer Distrib.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986)). However, a court may not take judicial notice of a fact that is "subject to reasonable dispute." <u>Lee</u>, 250 F.3d at 689. Because the publicly filed record before the state court in a matter related to the present action is not subject to reasonable dispute, the court here takes judicial notice of the fact that the documents were filed, the dates of their filing, and the representations made therein.

property as required by the terms of the ACS Contract,[2] defendants have misappropriated or threatened misappropriation of CDMS trade secrets," and "defendants' misappropriation is continuing." Id. at ¶ 57.

In support of Plaintiff's claim for conversion in state court, Plaintiff alleged that, "defendants . . . intentionally and wrongfully secured possession of CDMS property and converted this property to defendants' own use and possession"; "without making full disclosure, denied and concealed their continued use of CDMS property"; and "failed and refused, and continue to fail and refuse, to deliver the property to plaintiff." Id. at ¶¶ 61-63.

**B. Plaintiff's Present Action**

On April 15, 2011, Plaintiff filed a complaint in the Sacramento Superior Court of California against Defendants SSI, alleging breach of contract, breach of the covenant of good faith and fair dealing, misappropriation, conversion, breach of fiduciary duty, constructive fraud, constructive trust, and injunctive relief. See Pl's Compl., ECF No. 1, Ex. A. Specifically, Plaintiff alleged, inter alia, that: (1) pursuant to "Joint Venture Agreements" between CDMS and SSI, Defendant SSI was to act as a licensed dealer and marketer of CDMS software to third party customers; (2) customers were required to enter into a separate contract with Plaintiff CDMS to access CDMS's software; (3)

---

[2] Plaintiff uses the term "ACS Contract" to refer to "a written Advanced Consultant Service (ACS) User Agreement and License and Chemcheck User Agreement and License." Garrison Decl., ECF No. 30, Ex. A, ¶ 10.

Defendant SSI breached the joint venture agreements by allowing CDMS's customers to access CDMS software through SSI after the customers had terminated their agreements with CDMS and by encouraging and assisting CDMS customers in terminating those agreements. Id. at ¶¶ 15-27.

As to Lyman, Plaintiff CDMS alleges in its complaint against SSI that:

> Retailers The Lyman Group, Inc. and The Tremont Group, Incorporated (together, "Lyman") were at one time CDMS customers licensed to use CDMS software. Lyman's License provided that, upon expiration of the agreement, Lyman would promptly return CDMS software and would no longer be permitted to obtain access to the CDMS server to upgrade any databases. After Lyman cancelled its License with CDMS, Lyman attempted to contact the CDMS server but was unable to do so because its access to updating services had been shut off. CDMS is informed and believes, and thereon alleges, that SSI wrongfully provided Lyman with access to the CDMS server and/or proprietary database by permitting Lyman to surreptitiously use SSI's access.

Id. at ¶ 20.

On May 26, 2011, Defendant SSI removed the action to the district court; Defendant filed an answer on June 2, 2011. Def's Not., ECF No. 1; Def's Answer, ECF No. 10.

Pursuant to an August 30, 2011 pre-trial scheduling order issued by this court, "No further joinder of parties or amendments to pleadings is permitted except with leave of court, good cause having been shown." Order, ECF No. 15, at 2 (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992)).

**C. Motion to Modify the Scheduling Order and for Leave to Amend**

On January 17, 2012, Plaintiff CDMS filed the instant motion

4

to modify the scheduling order and for leave to amend the complaint to add claims against Lyman, "on the grounds [that] Plaintiff has recently discovered that these non-parties, assisted by Defendants [SSI] obtained unauthorized access to the CDMS database." Pl's Mot., ECF No. 20, at 1. Plaintiff acknowledges that "[t]he parties will no longer be completely diverse if the Lyman entities, California residents, are added," and suggests that the court "has the discretion to add them and then remand this matter to State court." Id. at 5.

Plaintiff adds, however, that: (1) "Lyman . . . is a necessary party to a complete adjudication of this controversy, though not an indispensable party under Rule 19(a)"; (2) "[t]he statute of limitations does not appear to be a factor given CDMS's delayed discovery of the claim against Lyman"; (3) "CDMS has acted diligently, first by promptly seeking leave to amend in State court once Lyman disclosed what actually occurred and, when that motion was denied, promptly moving to amend here"; (4) there is no "fraudulent joinder" because "CDMS clearly states a cause of action against Lyman" and "the facts necessary to add Lyman to this action did not surface until after removal"; (5) "CDMS will be prejudiced if the amendment is not permitted because it will be required to pursue two actions in different forums based on the same, newly-discovered facts"; and (6) "SSI will not be prejudiced since it was a participant in the conduct alleged . . . [and] the amendment will simply clarify what SSI has known for years" and, as to Lyman, "the amendment does no more than add facts Lyman has admitted under oath

5

in another forum." Id. at 6-7.

Defendant argues that the California state court that has been presiding over the ongoing state court action by CDMS against Lyman since 2007, "rejected CDMS's attempt to add to the [state] Lyman Action the same claims CDMS now seeks to add to this [federal] action . . . finding them to be an improper and untenable attempt by CDMS to overcome a pending summary adjudication motion filed by Lyman in the Lyman Action." Def's Opp'n, ECF No. 29, at 1. Defendant adds that, if CDMS is allowed to add Lyman as a defendant in this case and then seeks to remand the case back to state court for lack of jurisdiction, the state court will be "forc[ed] . . . to hear the very same claims that court has already rejected." Id. at 1-2. Defendant further argues that "each of the six factors the Court should consider when considering a proposed diversity-destroying amendment favors denial of CDMS's Motion." Id. at 2.

**D. Plaintiff's Requested Amendments**

At present, Plaintiff seeks to remove the references to Lyman contained in the original complaint forming the basis of this action and amend that complaint by, inter alia: (1) adding the allegation that "SSI provided Lyman with access to the CDMS database using the Interface even though SSI (and Lyman) knew that Lyman did not have the required ChemSearch or ChemSearch Lite license approved by CDMS"; (2) adding a cause of action for "Misappropriation of Trade Secrets" against both SSI and Lyman because "SSI has improperly provided access to the CDMS database . . . to Lyman" and "Lyman gained access to, and made links to, the

6

1  CDMS database, a CDMS trade secret, without a license to do so";
2  and (3) adding a cause of action for "Conversion" against both SSI
3  and Lyman because "Lyman's unlicensed . . . access to CDMS
4  proprietary property . . . was a conversion of that property."
5  Pl's Exs., ECF No. 21, Ex. 6.
6      In its present motion, Plaintiff draws a distinction between
7  its two types of proprietary software: ChemCheck, software that
8  provides assistance in applying agricultural chemicals in the
9  field; and ChemSearch Lite, a program that assists retailers in
10 storing and transporting agricultural chemicals.  Pl's Mot., ECF
11 No. 20, at 2.  Plaintiff argues that its original state court
12 action against Lyman pertained to Lyman's "fail[ure] to remove the
13 *ChemCheck* program from its computers after cancelling its licenses"
14 and that Plaintiff did not learn of Lyman's unauthorized use of
15 *ChemSearch Lite* "until Lyman sought summary adjudication" in the
16 state court action "in July of 2011," when Lyman "admitt[ed] SSI
17 linked it to the [CDMS] Database despite its lack of a ChemSearch
18 Lite license."  Pl's Reply, ECF No. 40, at 2.
19     Plaintiff asserts that, although Lyman's motion revealing the
20 facts related to ChemSearch Lite was filed in state court on July
21 15, 2011, Plaintiff's counsel did not request amendment of the
22 complaint before this court at the status (pre-trial scheduling)
23 conference held in chambers on August 22, 2011, because of
24 "vacations, the press of other business, [and] the fact CDMS's
25 response [to the summary adjudication motion in state court] was
26 due 30 days before the [state court] hearing" and therefore "the

7

opposition [in state court] was not due until late September," which caused Plaintiff's counsel to "not review[]" Lyman's "600 page motion . . . until early September 2011." Pl's Mot., ECF No. 20, at 4-5.

Plaintiff asserts that it then "sought leave [in state court] to amend the Lyman Complaint to add the new claims disclosed in Lyman's motion for summary adjudication" and "argued these claims were similar to those based on the ChemCheck license, but the Superior Court disagreed [on October 12, 2011], finding they involved a different product, different licenses and different facts," Pl's Reply, ECF No. 40, at 4-5, whereupon Plaintiff filed the motion presently before the court on January 17, 2012, Pl's Compl., ECF No. 20, at 5.

## II.   ANALYSIS

### A.  Standard for Modification of a Scheduling Order

Once a scheduling order is issued, the schedule may only be modified "for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4).

Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609-10 (9th Cir. 1992).

> [T]o demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, see [In re San Juan DuPont Plaza Hotel Fire Litig., 111 F.3d 220, 228 (1st Cir. 1997)]; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the

|   |   |
|---|---|
| 1 | development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, see Johnson, 975 F.2d at 609; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order, see [Eckert Cold Storage v. Behl, 943 F.Supp. 1230, 1233 (E.D. Cal. 1996)]. |

Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D. Cal. 1999); see also 6A, Wright, Miller & Kane, Fed. Prac. & Proc. Civ. 2d § 1522.1 ("good cause" means scheduling deadlines cannot be met despite party's diligence).

Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Cf. Engleson v. Burlington Northern R.R. Co., 972 F.2d 1038, 1043 (9th Cir. 1992) (carelessness not a ground for relief under Rule 60(b)); Martella v. Marine Cooks & Stewards Union, 448 F.2d 729, 730 (9th Cir. 1971) (same), *cert. denied*, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 248 (1972). Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. See Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D.Me. 1985). If the moving party was not diligent, the inquiry should end. Johnson, 975 F.2d at 609.

**B. Good Cause under Rule 16**

The court is unable to find good cause to modify the scheduling order so as to permit an amendment in this case.

In the original complaint filed against SSI in April 2011,

9

Plaintiff asserted that Lyman, through SSI, gained wrongful access to "the CDMS server and/or [its] proprietary database." Therefore, in April 2011, Plaintiff was cognizant of its claims against Lyman that were related to Plaintiff's present action against SSI and could have added Lyman as a defendant to its action against SSI at that time, subject to the applicability of the general procedural rule barring claim splitting and its exceptions. See Restatement (Second) Judgments §§ 24, 26 (1982). However, Plaintiff did not add Lyman as a defendant at that time, nor did Plaintiff seek to add Lyman as a defendant at any time between April 2011 and the August 2011 pre-trial scheduling conference in this case.

Plaintiff argues that it only became aware of Lyman's unauthorized use of ChemSearch Lite in early September 2011 (at least a month and a half after Lyman filed its motion containing the alleged admission), whereupon Plaintiff moved to amend in the state court's Lyman action and was denied in mid-October 2011.[3] The fact that Plaintiff was denied leave to add claims by the state court in the action against Lyman, does not give cause for Plaintiff here to seek leave to add Lyman as a defendant, and to reassert those same rejected claims against Lyman, in the present action against SSI. To hold otherwise, and then necessarily remand

---

[3] The court notes, however, that in the state court ruling denying Plaintiff's motion for leave to file a third amended complaint adding these new allegations against Lyman, the state court found that "Plaintiff has not rebutted [the Defendants'] contention" that "all of the evidence supporting the subject facts [underlying the new allegations against Lyman] w[ere] available to Plaintiff at least as early as one year ago." Pl's Exs., ECF No. 21, Ex. 6, at 54 (Tentative and Final Ruling).

10

1  the case to the state court for lack of subject matter
2  jurisdiction, would be to force the state court to hear claims that
3  it has already rejected in an ongoing action before it.
4      Furthermore, even if the court credits Plaintiff's argument
5  that Plaintiff was not aware of its claim against Lyman until
6  September 2011, Plaintiff still waited three months after the state
7  court's ruling to bring the present motion.  Plaintiff's given
8  reason for the delay in filing the present motion was "vacation,
9  the press of other business," and extended deadlines.  While the
10 court understands that these factors make expeditious filing
11 difficult, in the absence of more expeditious filing, and coupled
12 with clear indications that Plaintiff was aware of its claims
13 against Lyman related to SSI at least as early as April 2011, the
14 court is unable to find that Plaintiff was either diligent in
15 assisting the court in creating a workable Rule 16 order, diligent
16 in its efforts to comply with the order, or diligent in seeking
17 amendment of the Rule 16 order.
18     The Ninth Circuit has found that "the trial court ha[s]
19 authority to modify the pretrial order if in the court's discretion
20 modification [i]s determined to be necessary 'to prevent manifest
21 injustice.'"  <u>United States v. First Nat'l Bank of Circle</u>, 652 F.2d
22 882, 887 (9th Cir. 1981).  Here, Plaintiff had an opportunity to
23 raise these claims against Lyman in the state court proceeding
24 against Lyman and the state court denied such leave, in part, due
25 to "Plaintiff's evident delay in bringing the motion." Pl's Exs.,
26 ECF No. 21, Ex. 6, at 54-55 (Tentative and Final Ruling).

Plaintiff therefore had a forum to hear its claims against Lyman. In the event that the new allegations against Lyman are, in fact, wholly new and not covered by the state court's judgment in the Lyman action, and therefore not barred by res judicata, Plaintiff will likely have the opportunity to bring those claims in a new action against Lyman. Thus, modification of the pretrial order is not necessary to prevent manifest injustice.

For these reasons, the court finds that Plaintiff has not established good cause to modify the scheduling order. The court therefore declines to consider whether amendment would be warranted under either Federal Rule of Civil Procedure 15(a) or 28 U.S.C. § 1447(e).

### IV. CONCLUSION

Accordingly, Plaintiff's motion to modify the scheduling order and for leave to amend, ECF No. 20, is DENIED.

IT IS SO ORDERED.

DATED:  March 15, 2012.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

12