IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CROP DATA MANAGEMENT SYSTEMS, INC., a California Corporation,

Plaintiff,

No. 2:11-cv-01437 LKK KJN

v.

SOFTWARE SOLUTIONS INTEGRATED, LLC, et al.,

Defendants.

ORDER

______________________________/

Presently before the court is plaintiff's motion to compel complete forensic imaging and an open-ended computer inspection of all of defendants' "electronically stored information . . . maintained on a hard drive, backup disc, tape, other archive or historical storage medium, or in any other format, including all computers or servers maintained by" defendants.[1] (See Joint Statement re Discovery Disagreement ("Joint Statement") at 2; see also Pl.'s Req. for Entry on Land at 1, attached as Ex. 2 to the Joint Statement.) The request covers the period from July 1, 2006, through December 31, 2010. The inspection, which among other things encompasses upwards of 150 computers located in seven states and at least one email server,

[1] This matter proceeds before the undersigned pursuant to Eastern District of California Local Rule 302(c)(1) and 28 U.S.C. § 636(b)(1).

would be conducted by plaintiff's computer technician, but would be subject to review by defendants' counsel for assertions of privilege and other objections prior to disclosure to plaintiff under the parties' existing stipulated protective order. (See Proposed Protocol, attached to Joint Statement at Dkt. No. 47-1 at 1-2; see also Pl.'s Req. for Entry on Land at 3.)

The court heard this matter on its June 28, 2012 civil law and motion calendar. Attorney John T. Kinn appeared on behalf of plaintiff. Attorney R. Cameron Garrison appeared on behalf of defendant.

The court has fully considered the parties' Joint Statement Re Discovery Disagreement and oral arguments. For the reasons stated below and further explained on the record at the hearing, the court denies plaintiff's motion to compel. First, plaintiff's proposed computer investigation is overbroad and an improper "fishing expedition" that seeks information well-beyond that which pertains to the alleged wrongful access to plaintiff's proprietary material and products by The Lyman Group ("Lyman") and The Tremont Group ("Tremont"). (See Compl. ¶ 20.) Such discovery is, at best, speculative and not tied to any allegation in the complaint. Plaintiff unabashedly seeks an unbounded investigation into materials completely unrelated to Lyman and Tremont, but readily conceded at the hearing that despite the fact that discovery is about to close in this case, it presently has no evidence that any person or entity other than Lyman and Tremont wrongfully accessed plaintiff's products, information, or systems.[2]

Second, defendants correctly argue that the proposed computer discovery is unduly burdensome and costly. Plaintiff seeks discovery of all of defendants computers, servers, and storage systems. This discovery potentially includes the copying, review, and analysis of the contents of over 150 computers in seven states and defendants' exchange server that houses all of

---

[2] At the hearing, it was represented that the alleged unauthorized access by Lyman and/or Tremont occurred in or about 2006, and that a state court trial regarding that access concluded on June 27, 2012.

defendants emails. (See Joint Statement at 14-15; see also Rinker Decl. ¶ 3.) Defendants' president estimates that this discovery implicates the copying, review, and analysis of "over 25 terabytes of data."[3] (Rinker Decl. ¶ 3.) Setting aside *plaintiff's* potential costs in conducting this investigation, defendants reasonably argue that "at a minimum, [defendants'] costs would include, but not be limited to, the time to conduct the necessary privilege review, travel time necessary to retrieve and review the computers, expenses and downtime associated with the loss and replacement of computers to ensure uninterrupted business operations, and time and inspection costs associated with reviewing and analyzing each computer to determine its historical contents." (Joint Statement at 15 (citing Rinker Decl. ¶ 4).) The potential cost and disruption to defendants' business associated with plaintiff's inspection are great, while plaintiff's basis for the discovery sought is largely unfounded. Moreover, defendants credibly argue that the computer investigation would begin to approximate the damages plaintiff seeks in this case. Although not supported with a declaration or the actual discovery response, defendants' objections to plaintiff's discovery request assert that in response to an interrogatory, plaintiff approximated its damages at $457,200. (Defs.' Objs. to Request at 6, Ex. 12 to Joint Statement.) Defendants contend that the investigation here, which would include very significant privilege review by defendants' counsel, would certainly exceed $100,000. (Joint Statement at 15.) Plaintiff does not contest this figure, and the cost estimate seems a reasonable approximation given the volume of material at issue.

Third, plaintiff has not reasonably attempted to obtain the information it seeks short of the proposed, burdensome computer investigation. Defendants contend, and plaintiff does not dispute, that plaintiff had not noticed a single deposition as of the filing of the Joint Statement. (See Joint Statement at 17.) Additionally, plaintiff has not disputed defendants' contention that they answered relevant interrogatories in good faith. In particular, plaintiff's

---

[3] One terabyte equals 1,000 gigabytes.

Interrogatory 4 of its second set asked defendants to provide the name and address of "each participant and the date of each instance in which SSI, Inc. assisted a third party in creating a database using a CDMS program when the third party was not licensed by CDMS to use that program." (Joint Statement, Ex. 15 at 6.) Defendants responded: "Neither SSI entity has, to their knowledge, ever assisted a third party in creating a database using a CDMS program when the third party was not licensed by CDMS to use that program." (Id. at 7.) Plaintiff does not appear to have asked, or followed up with, similar questions by interrogatory, request for admission, or deposition, which would be less onerous initial steps prior to essentially unfettered computer discovery.

Finally, it is highly improbable that the parties could even complete the proposed inspection, including defendants' labor-intensive review for privileged or otherwise objectionable material and any resulting disputes, by the close of discovery. Discovery in this case must be "completed" by August 24, 2012, which means that "all discovery shall have been conducted so that all depositions have been taken and any disputes relative to discovery shall have been resolved by appropriate order if necessary and, where discovery has been ordered, the order has been complied with" by August 24th. (Status (Pretrial Scheduling) Order at 5, Dkt. No. 15.) Completion of the proposed inspection by August 24, 2012, seems impractical at best. Moreover, to the extent that plaintiff would move to modify the scheduling order to accommodate the desired discovery, plaintiff would be hard-pressed to make the requisite showings of "good cause" and "diligence" at this late date. See Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); see also Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (stating that a district court may modify the pretrial schedule if that schedule cannot reasonably be met despite the "diligence" of the party seeking the extension, and that "[i]f that party was not diligent, the inquiry should end"); accord Status (Pretrial Scheduling) Order at 10 ("The parties are reminded that pursuant to Fed. R. Civ. P. 16(b), the Status (pretrial scheduling) Order **shall not be**

**modified except by leave of court upon a showing of good cause.**") (emphasis in original).

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to compel (Dkt. No. 44) is denied.

IT IS SO ORDERED.

DATED: June 29, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE